IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHEILA LAW,

    Plaintiff,

    v.                                                      Case No. 08-1212-JTM

THE BOARD OF TRUSTEES OF
DODGE CITY COMMUNITY COLLEGE,

    Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion for summary judgment. (Dkt. No. 90). Sheila Law filed this action against her former employer, the Dodge City Community College Board of Trustees ("the Board"). Law alleges the Board discriminated against her and terminated her employment based on her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq,* as amended by the Civil Rights Act of 1991.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885

(10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56 (c) the party opposing summary judgment must do more than show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Law alleges the defendant terminated her employment because she is female. In the absence of direct evidence of sexual discrimination, the court applies the familiar analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007). Law is required to establish a prima facie case. *Id.* If she does so, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason. *Id.* When the employer articulates a legitimate, nondiscriminatory reason for the termination, the plaintiff has the burden to show the employer discriminated on the basis of sex. *Id.; St. Mary's*

2

*Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005). The plaintiff may meet this burden by showing that the reasons offered by the employer are mere pretexts to cover discriminatory intent. *Timmerman,* 483 at F.3d at 1113.

A plaintiff establishes a prima facie case of discrimination by showing he or she was: 1) a member of a protected class; 2) qualified for job; 3) terminated; and 4) the position was not eliminated or other employees were disciplined less severely. *Furnco Const. Corp. v. Waters*, 438 U.S. 567 (1978). The defendant concedes Law established a prima facie case. Law does not deny the defendant came forward with legitimate non-discriminatory reasons for her termination. Law's entire case turns on her establishing pretext by proving that similarly situated males were treated more favorably. A plaintiff must show the non-discriminatory reasons for termination are unworthy of belief to establish a genuine issues as to pretext. *Pinkerton v. Colo. DOT*, 56 F.3d 1052, 1065 (10th Cir.2009). A plaintiff has to show the proffered reasons are so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable fact finder could rationally find them unworthy of credence and hence infer the employer did not act for the asserted non-discriminatory reasons. *Id.*

Plaintiffs typically show pretext in one of three ways: 1) evidence the stated reason is false; 2) evidence the employer acted contrary to an existing policy proscribing the action taken; or 3) evidence she was treated more harshly than similarly situated employees who violated work rules of comparable seriousness. *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230-31 (10th Cir.2000). To determine whether pretext has been shown, the facts must be examined as they appeared to the persons making the employment decisions. *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004). "An employer may reasonably prioritize trustworthiness over other nondiscriminatory characteristics in determining whether to discharge an employee for misconduct."

*Rivera v. City & County of Denver*, 365 F.3d 912, 924 (10th Cir.2004) (quoting *Williams v. Penske Transp. Servs. Inc.*, 46 F.Supp.2d 1135, 1142 (D.Kan. 1999)).

The defendant employed Law as a part-time security guard in October 2005. Jim Perkins was hired as Director of Security in September 2007. Dena Ward was in charge of the Security Department prior to Jim Perkins. Bev Temaat was the administrator over the Security Department. Anthony Lyon was Temaat's immediate supervisor. Richard Burke was the college president and Lyon's immediate supervisor. No one made any complaints about Perkins treating them differently due to their gender prior to Law filing this lawsuit. No other security officer, except for Law's husband, ever saw Perkins treat her differently.

On January 9, 2008, Law worked as a security officer at a college basketball game. Mike Rich and plaintiff's husband Melvin Law were also scheduled to work the basketball game. During Law's shift at the game she left and went to the campus security office. Law sat in the office for a little while and then went to the bathroom. She then accessed the internet in the office for a non-work-related purpose. Law did not intend to return to the basketball game. Law's husband sent her a text message that a fight had broken out at the game and she should return. She did so and assisted in escorting basketball players off the court.

After the game on January 9, 2008, the college athletic director told Temaat he thought fewer security guards responded to the fight than should have. Perkins asked Law why she left the game, and she said to let a student into his room back on campus. Perkins believed her explanation was odd since he expected students be referred to college housing employees. Law told Perkins the resident assistant did not have a master key to let the student into his room. Perkins spoke to the resident assistant in charge, who said he did have a master key and used it to let the student into his

room. The resident assistant received no assistance from security to let a student in on the night of January 9, 2008.

Law provided Perkins a written statement detailing she had left the game to let a student into his room. Perkins informed Law she was being suspended and she assumed she was suspended because she had given a false statement. She claims she lied in her written statement because the truth was embarrassing and her private medical history was none of their business. Law holds a full-time position as a fabrication clerk for Cargill. She has left work at Cargill due to similar medical problems and simply told them she was not feeling well. There would have been no investigation if Law had told her supervisor she left the game because she was ill. Perkins was concerned when he discovered Law was untruthful to him. He was unaware of any other officers being untruthful to him.

During Perkins' investigation he discovered Law had gone bowling while clocked in and failed to show up on a scheduled work shift. Law admitted she bowled on duty on more than one occasion, and the bowling events usually took approximately two hours. Her bowling league did not require her to bowl on Sunday nights, and she could have notified the bowling league she needed to work. Law could have bowled on another night and turned in her scores. She does not know why she did not use that procedure rather than bowling while clocked in for work. When she went bowling while on duty, she put entries in her log indicating she had been patrolling on campus during that time so it looked like she was still on campus. When an officer wants to take a scheduled work day off, the officer is expected to find another officer to work the shift and obtain Perkins' approval. Perkins was unaware of any other occasion when an officer supposedly agreed to cover another officer's shift without contacting him. He was unaware of any officer, other than Law, who

clocked in and then left campus without getting his permission. Apart from plaintiff and her husband, all other officers understood it was not acceptable to leave campus while on duty for personal reasons without notifying a supervisor.

Perkins regards trust as very important in security work. After completing his investigation, he concluded he could no longer trust Law and recommended she be terminated. He forwarded his report and recommendation to Temaat. After Temaat received Perkins' report and recommendation, she recommended Law be terminated. She based her termination recommendation on Perkins' investigation, the importance of trust, and an earlier experience with Law. Specifically, prior to Perkins' employment Temaat attempted to locate Law and discovered she was at a race track while on duty. Temaat told Ward (Perkins' predecessor) to tell Law not to do it again.

Lyon also received Perkins' investigation results, and Temaat informed him about her experience with Law being away from the campus on personal business. Lyon recommended Law be terminated. Perkins, Temaat, and Lyon furnished information to Burke, and he made the decision to terminate Law. Law's dishonesty was the major factor for Burke's decision to terminate her. Law claims Perkins is the only person that took her gender into account in making a decision about her employment.

Law alleges the defendant terminated her employment because she is female. The Board offered the following reasons for Law's termination: 1) lying to a supervisor; 2) providing a written false statement; 3) performing personal activities off campus, such as bowling, while clocked in; 4) making false entries in her logs and 5) not reporting to work on December 30. Law admits doing all those things, and she does not contend her termination was contrary to an existing policy

proscribing the action taken. She rests her claim entirely on the allegation that she was treated more harshly than similarly situated employees who engaged in the same or equally serious misconduct.

Law alleges other employees engaged in the same or equally serious misconduct but were not terminated. There is no evidence any other employee lied to a supervisor, provided a written false statement, engaged in purely recreational activities while clocked in, made false entries in logs or failed to report to work as scheduled. Even if the court assumed other employees had engaged in the same or equally serious misconduct, Law is still required to establish that Perkins knew of the other employees' misconduct. There is no evidence that Perkins knew of any other employees' misconduct prior to Law's termination.

The court finds the Board advanced legitimate, nondiscriminatory reasons for Law's termination, and she has not shown those reasons to be a pretext for sexual discrimination. As such, summary judgment in favor of the defendant is proper on Law's claim.

IT IS ACCORDINGLY ORDERED THIS 29th day of July, 2009, that the defendant's motion for summary judgment (Dkt. No. 90) is granted.

 s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE